ALDERMAN, Chief Justice.
Escambia River Electric Cooperative, Inc., seeks review of an order of the Public Service Commission resolving a territorial dispute in favor of Gulf Power Company. We affirm.
Escambia River filed a petition with the Commission under authority of section 366.-04(2)(e), Florida Statutes (1980 Supp.), seeking resolution of a territorial dispute between it and Gulf Power Company. At the conclusion of a public hearing, the Commission found that both Escambia River and Gulf Power had the generating capacity, transmission facilities, and reliability to provide the requested 115 kv service, that both companies had customers in and around the disputed area, that there would be no duplication of transmission facilities because neither company had 115 kv lines in the area, and that the cost of providing the requested service would be approximately the same for the two companies.
The Commission then ruled in favor of Gulf Power declaring that it was entitled to provide electric power to the Exxon Blackjack Creek Miscible Gas Displacement Project and that Escambia River was prohibited from serving the Project. In support of its ruling, the Commission stated:
The facts in this dispute fail to demonstrate any significant advantage possessed by Gulf or Escambia with respect to capacity to provide the electrical power requirements requested by Exxon. The Commission is basically confronted in this case with a policy decision as to whether a privately owned utility or a rural electric cooperative should serve requirements of this nature when no factual or equitable distinction exists in favor of either party. The Commission concludes *1385 that the dispute must be resolved in favor of Gulf Power Company.
We feel that our decision comports with the policy delineated in Tampa Electric Co. v. Withlacoochee River Coop., 122 So.2d 471 (Fla.1960). In that case, the “preferential economic advantage” enjoyed by rural electric cooperatives, such as Escambia, and the “fundamental underlying purposes which motivated the establishment of the rural electrification program” were enunciated as grounds for enjoining Withlacoochee from providing electrical service in competition with Tampa Electric Company, a private utility. .
The plain language as well as the spirit of Section 425.04, Florida Statutes, was additionally cited as a statutory prohibition against such competition. The Florida Supreme Court further observed in Withlacoochee as follows:
It is a matter of common knowledge that the real purpose to be served in the creation of REA was to provide electricity to those rural areas which were not being served by any privately or govemmentally owned public utility. It was not intended that REA should be a competitor in those areas in which as a matter of fact electricity is available by application to an existing public utility holding a franchise for the purpose of selling and serving electricity in a described territory.
While we recognize the valuable service performed by the cooperatives, we believe that this case, too, presents an example of the type of electrical requirements that is beyond the basic intent and purpose of the cooperatives, especially when a privately owned utility can reasonably meet those requirements.
We find, contrary to the arguments made by Escambia River, that the record contains competent substantial evidence to support the Commission’s findings of fact. We also find that when, as in the present case, no factual or equitable distinction exists in favor of either utility, Tampa Electric Co. v. Withlacoochee River Electric Cooperative, Inc., 122 So.2d 471 (Fla.1960), controls, and the territorial dispute is properly resolved in favor of the privately owned utility. We therefore agree with the Commission’s conclusion of law concerning the application of Withlacoochee to the factual situation in the present case, and we affirm its order resolving the territorial dispute in favor of Gulf Power.
We disagree, however, with the Commission’s alternative finding that its more extensive jurisdiction over privately owned utilities is an additional consideration supportive of a policy decision in favor of Gulf Power. We disapprove the jurisdictional distinction as a valid reason to support a ruling for a privately owned utility and against a rural electric cooperative in a territorial dispute.
Accordingly, we affirm the decision of the Public Service Commission.
It is so ordered.
BOYD, SUNDBERG and McDONALD, JJ., concur.
ADKINS, OVERTON and EHRLICH, JJ., dissent.